# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**BOWLERO FAIRVIEW, LLC,**

         *Plaintiff*,

v.

**VILLAGE FV, LTD.,**

         *Defendant*.

Civil Action No. 3:23-cv-00379

## COMPLAINT

Plaintiff Bowlero Fairview, LLC ("Bowlero" or "Tenant"), by its undersigned counsel, alleges and complains of Defendant Village FV, Ltd. ("Defendant" or "Landlord"), as follows:

## INTRODUCTION

1. Tenant has a valid Lease with Landlord for the Demised Premises.[1] As of December 6, 2022, Tenant was – and as of the date hereof remains – current on all sums sought in Landlord's monthly invoices to Tenant.

2. On December 7, 2022, however, Landlord unlawfully locked Tenant out of the Demised Premises based on purportedly outstanding rent that Tenant had in fact paid—and Landlord had accepted without protest—on December 6, 2022.

---

[1] "Lease" refers to, collectively, that certain Shopping Center Lease, dated February 5, 2018, by and between Landlord and Tenant, as amended by that certain Commencement Agreement, dated November 14, 2018, and that certain Rent Deferral Lease Agreement, dated June 24, 2020. The "Demised Premises" under the Lease refers to the real property and improvements located at 351 Town Place, Fairview, Texas 75069. A copy of the Lease is attached hereto as Exhibit A.

3. Landlord's lockout was not permitted under the Lease. The Lease only permits Landlord to terminate Tenant's right of possession following Lease termination, which termination Landlord has repeatedly disavowed, or as part of a judicial proceeding, which Landlord has not commenced.

4. Thus, Landlord acted – albeit wrongly – under Section 93.002(c)(3) of the Texas Property Code, governing the exclusion from possession of a tenant delinquent in rent. But, in so doing, Landlord violated Section 93.002(f), which requires a landlord, when changing the locks, to post a written notice on the front door of the leased premises stating the name and address or telephone number of the individual or company from which the new key may be obtained. Landlord failed to provide Tenant with this notice.

5. Landlord's unlawful Section 93.002 lockout, which continues to present, exposes Tenant to potentially significant liability. For example, the Demised Premises' alarm system is inactive, which leaves Tenant's personal property exposed. In fact, security camera footage has shown unidentified individuals entering and leaving the Demised Premises without resetting the alarm, exposing Tenant to significant risk of lost or damaged property. Landlord's unlawful Section 93.002 lockout also exposes Tenant to potential premises liability to individuals who are not Tenant's invitees, whom Tenant has no ability to exclude, and in relation to conditions that Tenant cannot control.

6. As a result of Landlord's unlawful actions, Bowlero is entitled under Section 93.002(g) of the Texas Property Code to terminate the Lease, and recover from Landlord its actual damages, reasonable attorneys' fees, and court costs, as detailed below.

## PARTIES, JURISDICTION, AND VENUE

7. Bowlero is a Delaware company with its principal executive offices located in Mechanicsville, Virginia.

8. Bowlero's sole member is AMF Bowling Centers, Inc., a company duly incorporated in Virginia with its principal place of business at 7313 Bell Creek Road, Mechanicsville, Virginia 23111.

9. Landlord is a Texas limited partnership with its executive offices located at 2000 McKinney Ave., Suite 1000, Dallas, Texas 75201.

10. Landlord's sole partner is LO GP, Inc., a company duly incorporated in Texas with its principal place of business at 2000 McKinney Ave., Suite 1000, Dallas, Texas 75201.

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as Defendant Village FV, Ltd., is a limited partnership headquartered in this Judicial District.

## FACTUAL BACKGROUND

13. Under the Lease, Tenant is responsible for a monthly payment comprised of Minimum Guaranteed Rental, a Common Area Maintenance Payment, an Insurance Escrow Payment, and a Tax Escrow Payment (together, the "Monthly Payment"). Tenant's Monthly Payment is due on the first of each month.

14. Tenant began operating its business, a bowling alley, at the Demised Premises on or about November 17, 2018.

15. Tenant continuously operated a bowling alley at the Demised Premises until it was required to close on March 20, 2020 due to restrictions imposed in response to the COVID-19 Pandemic. Tenant has not resumed operation of the bowling alley as of the date of this Complaint.

16. Following closure, however, Tenant continued to timely pay each Monthly Payment for more than two years, until October 2022.

17. On October 31, 2022, Landlord sent Tenant a letter stating that Tenant had an unpaid rental obligation in the amount of $33,673.10 (the "October Notice").[2] The October Notice stated that if the unpaid rental amount was not paid within ten (10) days, Landlord intended to exercise remedies for default.

18. On November 11, 2022, Landlord sent Tenant a second letter stating that Tenant's "account remains past due in the amount of $33,673.10" (the "November Notice").[3] The November Notice stated that if the unpaid rental amount was not paid within five (5) days, Landlord intended to exercise remedies for default.

19. Notably, the amounts demanded in the October and November Notices did not match the contemporaneous monthly invoices sent electronically to Tenant.[4]

---

[2] A copy of the October Notice is attached hereto as Exhibit B.

[3] A copy of the November Notice is attached hereto as Exhibit C.

[4] Tenant reserves all rights concerning the defectiveness of the October and November Notices, and therefore any alleged Event of Default predicated on those notices. As described above (without limitation): (i) the amounts demanded in the October and November Notices conflict with demands made in contemporaneous invoices sent from Landlord, and (ii) the November Notice is impermissibly vague as to whether it constitutes a second demand for the amount

20. Tenant failed to receive the October and November Notices until a substantial period following the date of the notices.

21. By letter dated December 5, 2022, counsel for Landlord notified Tenant that Tenant had allegedly not made the rent payments described in the October and November Notices.[5] Landlord's counsel further informed Tenant that Tenant's right of possession was allegedly terminated pursuant to Section 19.1 of the Lease, but explicitly stated that Landlord's election to terminate Tenant's right of possession was *not* an election to terminate the Lease.

22. In a December 6, 2022 letter sent *via email* to Landlord's counsel, Tenant informed Landlord's counsel that Tenant had satisfied all outstanding payment obligations and was, as of that date, current on all amounts due to Landlord.[6] Tenant's letter specifically confirmed that its wire payment had posted earlier in the day.

23. Landlord accepted Tenant's December 6, 2022 payment without protest and has not to-date returned any portion of that payment.[7] Indeed, Tenant did not receive further written correspondence from Landlord's counsel until February 8, 2023 in response to Tenant's letter concerning the unlawful lockout at issue here.

24. Despite receiving payment by wire on December 6, 2022, on the following day, December 7, 2022, Landlord changed the locks on the doors at the Demised Premises so Tenant was unable to enter the Demised Premises.

---

described in the October Notice, or demands some additional amount. Tenant previously informed Landlord on December 6, 2022 that its alleged notices were defective.

[5] A copy of Landlord's December 5, 2022 letter is attached hereto as Exhibit D.

[6] A copy of Tenant's December 6, 2022 letter is attached hereto as Exhibit E.

[7] Indeed, as discussed in ¶ 37 below, Landlord has continued to accept Tenant's Monthly Payments.

25. Tenant is aware that the lockout occurred on December 7, 2022 based on its security camera footage. That footage also underscores that Landlord posted no notice of where Tenant could obtain new keys, including no notice on the front door as is required under Section 93.002(f) of the Texas Property Code, when changing the locks.

26. Section 19.1 of the Lease does not permit a lockout in the manner that occurred here, even if an Event of Default existed under Article 19 of the Lease.[8]

27. First, under Section 19.1(A), Landlord may "*[t]erminate this Lease* in which event Tenant shall immediately surrender the Demised Premises to Landlord, and if Tenant fails to do so, Landlord may . . . enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying said premises or any part thereof, without being liable for prosecution or any claim of damages therefor."

28. By its own admission, Landlord did not exercise this remedy. In its December 5, 2022 letter purporting to terminate Tenant's right of possession, Landlord explicitly stated that it was *not* terminating the Lease. Similarly, in Landlord's February 8, 2023 letter, Landlord cited alleged rights under Section 19.4 of the Lease, which section presupposes that Landlord has elected *not* to terminate the Lease.[9]

---

[8] Tenant contests that an Event of Default occurred. Section 19.1(1) of the Lease—the provision describing an Event of Default in the event of late rent—requires ten (10) days written notice of such default. As explained above, Landlord's October and November Notices were defective, and cannot serve as the predicate for an Event of Default or remedies under the Lease.

[9] As quoted in Landlord's February 8 letter, Section 19.4 of the Lease states: "[i]n the event that the Landlord elects to repossess the Demised Premises *without terminating this Lease*, then Tenant shall be liable for and pay to Landlord… all rental and other indebtedness accrued to the date of such repossession…"

29. Nor can Landlord claim that the lockout falls under Section 19.1(B), whereby Landlord may "*[p]ursuant to a judicial proceeding* under applicable Texas law, enter upon and take possession of the Demised Premises and expel or remove Tenant and any other person who may be occupying said premises or any part thereof, by force, if necessary, without being liable for prosecution or any claim for damages therefor with or without having terminated this Lease." Landlord has not locked out Tenant as part of any judicial proceeding, such as a forcible detainer action under Texas law. *See* Tex. Prop. Code Ann. § 24.0061.

30. Rather, Landlord erroneously attempted a Section 93.002 lockout based on nonexistent rent delinquencies, and in so doing, breached required notice provisions of the Texas Property Code.

31. Tenant did not discover that it had been locked out until January 17, 2023, at which point Tenant attempted—unsuccessfully—to contact Landlord multiple times to regain access so that Tenant could perform maintenance on the Demised Premises' security system.

32. Specifically, on January 17, 2023, Tenant's property manager, Brian Jones, called and texted Walt Davis—the Senior Vice President of Retail at Lincoln Property Company and property manager for Landlord—regarding the lockout: "Walt following up on my messages. We have been locked out of the premise. I have confirmed rent is up to date. Please advise ASAP so I can follow up with my legal and ops teams. Thank you." That same day, Jones also called Landlord's broker and leasing manager, Tina Wilson. Jones did not receive an answer to either communication.

33. The next day, January 18, 2023, Jones followed up with Davis via email:

> Good afternoon Walt, I am following up on my multiple calls and voice messages yesterday. It seems the landlord has rekeyed our center and we no longer have access to the premises and our personal property. I have left multiple voicemails with you and your team and have not hear[d] back from anyone. Please advise ASAP as there are safety concerns surrounding our inability to access the premises and our personal property. Thank you.

Jones received a "Read" receipt, but did not receive a reply.

34. Unable to perform maintenance on the Demised Premises' security system, on January 24, 2023, Tenant's counsel sent Landlord a letter, requesting immediate access given the significant risk of lost or damaged property, as well as premises liability, that the lockout imposed on Tenant.[10]

35. On February 8, 2023, Landlord responded with a letter containing inconsistent and conflicting references to the Lease. Landlord cited Section 19.1(A) as its authority for the lockout, yet failed to state that it was terminating the Lease.[11] Landlord then quoted Section 19.4 of the Lease in the very same paragraph, which explicitly begins with "[i]n the event that the Landlord elects to repossess the Demised Premises *without terminating this Lease*…" Landlord cited no authority under the Lease or Texas law entitling it to exercise the self-help remedy it has pursued here.[12]

---

[10] A copy of Tenant's January 24, 2023 letter is attached hereto as <u>Exhibit F</u>.

[11] A copy of Landlord's February 8, 2023 letter is attached hereto as <u>Exhibit G</u>. This letter does not purport to have based its Section 93.002 lockout on Tenant's non-operation of the Demised Premises, nor could it for Landlord had not previously provided Tenant of any notice for an alleged default based on Tenant's non-operation.

[12] In its February 8 letter, Landlord claimed that the Lease obviated the notice requirement under Section 93.002(f) because Section 93.002(h) states that a Lease supersedes the statute "to the extent of any conflict," and Section 19.1 of the Lease allows the Landlord to exercise any of the specifically enumerated remedies "without notice or demand whatsoever." But here there is no conflict between the Lease and Section 93.002. Landlord undisputedly did *not* exercise any of the remedies in Section 19.1 for the reasons described above. *See supra* ¶ 27-29. Therefore, the notice language in Section 19.1 is irrelevant with respect to the remedy that Landlord elected to pursue here—a Section 93.002 lockout. Unless Landlord elects a remedy allowed by the Lease (it did not), Landlord must follow the requirements of Section 93.002 in order to effectuate a

36. Despite being locked out, Tenant timely paid the Monthly Payment on January 1, 2023 and February 1, 2023.

37. Without any notice, Landlord rejected Tenant's timely January Monthly Payment, but then accepted Tenant's timely February Monthly Payment on February 3, 2023.

## COUNT 1:  UNLAWFUL LOCKOUT

38. Tenant repeats and realleges each and every allegation set forth herein.

39. On December 7, 2022, Landlord changed the locks to the Demised Premises and intentionally prevented Tenant from entering the Demised Premises.

40. Landlord could not have conducted this lockout pursuant to Section 19.1 of the Lease because, at the time of the lockout, Landlord had neither terminated the Lease, nor received authorization for a lockout by way of judicial proceeding.

41. Rather, Landlord's lockout was an attempt to engage in self-help under Texas common law, as governed by the Texas Property Code.

42. Landlord's Section 93.002 lockout is unlawful for at least two reasons.

43. First, contrary to Section 93.002(c)(3) of the Texas Property Code, as of the date of the lockout, December 7, 2022, Tenant was not delinquent in paying any part of the rent due under the Lease.

44. Moreover, in violation of Section 93.002(f), Landlord changed the locks without placing a written notice on Tenant's front door stating the name and address or telephone number of the individual or company from which the new key may be obtained.  In fact, Landlord failed to provide any notice whatsoever of its wrongful

---

lockout.  Section 93.002(f) clearly requires Landlord to post notice in the event of a lockout, and the Lease says nothing to the contrary.

lockout, which Tenant only discovered weeks later when attempting regularly scheduled maintenance on the Demised Premises' security system.

  45. As a result of Landlord's violation, under Section 93.002(g), Tenant is statutorily entitled to termination of the Lease and to recover from Landlord the greater of one month's rent or $500, actual damages (to be determined by these proceedings), court costs, and reasonable attorneys' fees.

## PRAYER

WHEREFORE, Tenant requests that the Court enter judgment:

  (a) pursuant to Tex. Prop. Code Ann. § 93.002(g)(1), declaring the Lease terminated;

  (b) pursuant to Tex. Prop. Code Ann. § 93.002(g)(2), awarding Tenant its actual damages in an amount to be determined at trial, but in an amount not less than the sum of all Monthly Payments made since December 7, 2022;

  (c) pursuant to Tex. Prop. Code Ann. § 93.002(g)(2), awarding Tenant its costs and attorneys' fees incurred in connection with the lockout; and

  (d) awarding Tenant such other and further relief to which it may be justly entitled.

Dated: February 17, 2023

Respectfully submitted,

*/s/ Thomas P. Mitsch*

Thomas P. Mitsch (Texas Bar No. 24102218)
tmitsch@velaw.com
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716

*Counsel for Plaintiff Bowlero*